UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES OLIVER, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:17-cv-02932-AGF |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff James Oliver is not disabled and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, Commissioner's decision is affirmed.

## BACKGROUND

Plaintiff, born October 6, 1970, was employed as a mechanic and service advisor in the automotive maintenance industry until early 2014 when, at age 43, radiating low back pain impeded his ability to stand for long periods. Plaintiff applied for disability benefits in February 2014. His application was denied at the initial administrative level, and he thereafter requested a hearing before an Administrative Law Judge (ALJ). On April 13,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit.

2016, Plaintiff, represented by counsel, testified and presented other evidence. The record was later supplemented with orthopedic and psychological evaluations as well as interrogatory responses by a vocational expert. Plaintiff's counsel responded to the vocational expert's interrogatory responses. Plaintiff's testimony and the documentary evidence are fairly summarized in the parties' respective statements of uncontroverted fact and responses (ECF Nos. 9-1, 14-1-2, 15-1). The Court adopts the facts as set forth therein.

To summarize, Plaintiff had a history of back problems and had undergone a spinal fusion in 2005. He first sought medical treatment related to this case in March 2014. An MRI revealed a total fusion at L5-S1 and a disc bulge at L4-L5. In June 2014, Plaintiff was examined by a pain specialist, Dr. Nabil Ahmad, who diagnosed lumbar post-laminectomy syndrome. In August 2014, Dr. Ahmad issued an opinion indicating Plaintiff's work limitations as: less than two hours sitting, standing, or walking; lifting or carrying less than 10 pounds; no twisting, bending, crouching or climbing; off task 20% of the work day; and absent more than three times per month. After a second visit in November 2014, Dr. Ahmad issued another opinion indicating that Plaintiff was totally unable to work. He opined that Plaintiff could occasionally lift one pound and carry less than ten pounds, occasionally bend at the waist, and never squat or crawl.

Plaintiff continued to see Dr. Ahmad and other pain specialists monthly or semi-monthly through the time of the administrative hearing in 2016. During that time, he tried a spinal cord stimulator, a pain pump, injections, and various medications. Some

treatments provided relief, and his gait, motor strength, reflexes, and leg-raises were mostly normal.  Also during that time, Plaintiff sought psychotherapy for anxiety and depression.  At the administrative hearing, Plaintiff testified that he could sit for two hours, stand or walk for an hour, and lift ten pounds, but he has difficulty concentrating due to pain and insomnia.

After the hearing, Dr. Anne Winkler, a state agency medical consultant, reviewed Plaintiff's records and opined that he had lumbar degenerative disc disease but could lift and carry 20 pounds, sit for six hours a day, stand or walk for two hours a day, and occasionally climb, stoop, and kneel.  Additionally, Plaintiff underwent a psychological evaluation by Dr. Thomas Spencer, who identified mood and anxiety disorders, rated Oliver's Global Assessment of Functioning as 55-60, and opined that Plaintiff was capable of performing simple tasks involving minimal social interaction.

The vocational expert was asked to assume a hypothetical individual with Plaintiff's profile having a residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R 404.1567(a), except that the individual (1) is unable to crawl or to climb ladders, ropes, and scaffolds; (2) can occasionally stoop, kneel, crouch, and climb ramps or stairs; (3) must avoid exposure to extreme vibration, operational control of moving machinery, unprotected heights, and hazardous machinery; (4) is limited to occupations involving simple, routine, and repetitive tasks; and (5) is limited to low-stress jobs requiring only occasional decision-making and changes in the work setting with no contact with the public and only casual and infrequent contact with co-workers.  Based on that

3

hypothetical and information contained in the Dictionary of Occupational Titles (DOT), the vocational expert opined that the individual would be able to perform unskilled occupations such as document preparer, eyeglass polisher, and stuffer.

**ALJ's Decision**

In January 2017, the ALJ issued its decision finding that Plaintiff had the RFC to perform sedentary work, with the aforementioned limitations. In support of this determination, the ALJ noted the following.

In April 2014, Plaintiff visited a neurosurgical specialist, Dr. Tanya Quinn, who examined Plaintiff and observed normal strength, reflexes, and gait, all inconsistent with disabling spinal impairments. Dr. Quinn's opinion did not identify limitations and thus was not probative in that respect. As mentioned above, Dr. Ahmad provided opinions after Plaintiff's visits in August and November 2014, first indicating limitations and later deeming Plaintiff unable to work. The ALJ gave little weight to these early opinions because they were inconsistent with specific observations from the November visit and later visits throughout 2015 and early 2016. For example, despite Plaintiff's reported pain and occasionally abnormal gait, his reflexes, motor strength, and leg-raises were mostly normal. In August 2015, Plaintiff had a normal gait and could stand without the assistance of a cane. In late 2015 and early 2016, Plaintiff experienced some relief with the pain pump and injections. In January 2016, an MRI excluded lumbar compression fracture or misalignment. In sum, Plaintiff's "records var[ied] in terms of his ongoing level of pain or his motor strength or sensation loss." Conversely, the ALJ accorded great

weight to Dr. Winkler's opinion that Plaintiff was able to work, with limitations, because it was "consistent with the overall medical and other records." The ALJ reasoned that, while Plaintiff's medical condition could reasonably cause his symptoms, the evidence did not support the alleged severity and limiting effects that Plaintiff claimed.

Finally, relying on the opinion of vocational expert Dr. Jennifer LaRue, considering Plaintiff's RFC and vocational factors (age, education, work experience), the ALJ found that Plaintiff could perform certain sedentary, unskilled jobs listed in the DOT and available in the national economy such as document preparer, eyeglass polisher, or stuffer. Accordingly, the ALJ found that Plaintiff was not disabled as defined under the Social Security Act.

Plaintiff filed a timely request for review by the Appeals Council, which denied his request in October 2017. Thus Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review. In his sole point, Plaintiff argues that the ALJ's determination of his RFC is not supported by substantial evidence because the ALJ relied entirely on the opinion of a non-treating physician, Dr. Winkler and did not accord proper weight to the opinions of Dr. Ahmed.

## DISCUSSION

**Statutory Framework**

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12

5

months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments.

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a vocational expert (or other similar evidence) to meet the step-five burden. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Standard of Review**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by

substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome." *Id*. "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. *Id*. In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.* The Court defers heavily to the findings and conclusions of the Social Security Administration. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

**Arguments of the Parties**

Plaintiff asserts that the ALJ's RFC finding is not supported by substantial evidence in that the ALJ relied heavily on Dr. Winkler's non-treating opinion, to the exclusion of Dr. Ahmad's opinions as Plaintiff's treating physician. More specifically, Plaintiff contends that: (1) Dr. Ahmad was a "treating source" such that his opinions should be given great weight; (2) Plaintiff's normal functioning on some measures (e.g., leg-raises, strength, reflexes) does not negate Dr. Ahmad's opinions as to Plaintiff's work limitations; and (3)

7

Dr. Winkler's opinion, in check-box form with little narrative explanation, is insufficient to support the ALJ's decision.

Defendant counters that: (1) Dr. Ahmad was not a treating source when he issued his opinions in 2014 because he had only examined Plaintiff twice at that point, so his opinions command no deference; (2) Dr. Ahmad's opinions about Plaintiff's limitations are belied by the overall body of treatment records as to Plaintiff's physical abilities; and (3) Dr. Winkler's opinion is most consistent with the record as a whole.

In reply, Plaintiff contends that: (1) even if Dr. Ahmad is not considered a treating source, his opinion as an examining doctor is entitled to more weight than Dr. Winkler's; (2) Dr. Winkler failed to supply sufficient supporting explanations for her opinion, so it deserves no weight; and (3) the ALJ erred by substituting his judgment for that of Dr. Ahmed regarding the relative importance of Plaintiff's normal and abnormal tests.

**Analysis**

In essence, Plaintiff simply challenges the ALJ's allocation of weight between conflicting opinions. Pursuant to 20 C.F.R. §404.1527(c),[2] an ALJ *may* give controlling weight to the opinion of a treating source *if* the ALJ finds that the opinion is well-supported by clinical and laboratory diagnostics and not inconsistent with other substantial evidence in the record. If the ALJ does not give a treating source's opinion controlling weight, then the ALJ determines how much weight to give the opinion based on the length, frequency,

---

[2] As the parties observe, the regulation applicable to Plaintiff's claim was that in effect August 24, 2012, to March 26, 2017.

8

and nature of the treating relationship, consistency with the record as a whole, and supportability. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* Though the opinion of a treating physician is "normally entitled to great weight," the Commissioner "may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence" or when the treating physician's opinion is "internally inconsistent or conclusory." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). In other words, a "treating physician's opinion does not automatically control, since the record must be evaluated as a whole." *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). "The regulations require that the ALJ 'always give good reasons' for the weight afforded to a treating physician's evaluation." *Id*. at 921, citing 20 C.F.R. §404.1527(d)(2).

Applying the foregoing standards to the present record, the Court cannot say that the ALJ's decision falls outside the available zone of choice. Even accepting *arguendo* that Dr. Ahmad was Plaintiff's treating physician after two visits in 2014, a volume of subsequent treatment records undermines the probative value of his initial assessment. Numerous records from Plaintiff's regular visits in 2015 and early 2016 reflect decreases in

pain and, as previously noted, normal function by a variety of measures.[3] While those records also note ongoing difficulties, and while a claimant need not be bedridden to be found disabled (*Reed*, 399 F.3d at 923), an ALJ's reliance on such indicators is proper. *See, e.g.*, *Fentress v. Berryhill*, 854 F.3d 1016, 1020-21 (8th Cir. 2017) (affirming decision where ALJ discounted treating physician's opinion in light of claimant's normal muscle strength, range of motion, gait, and limb function). Here, the ALJ expressly acknowledged that Plaintiff's records "vary in terms of his ongoing level of pain or his motor strength or sensation loss" and clearly considered those factors in determining Claimant's RFC. This Court may not reverse simply because some evidence would have supported a different outcome. *Id*. Further, Plaintiff reported in 2016 that he was independent in his activities of daily living, was able to drive, drove his son to school each morning, went to hockey and baseball games, and took a vacation to Florida. While a person's ability to engage in daily activities does not constitute substantial evidence of his ability to work (*Ponder v. Colvin*, 770 F.3d 1190 (8th Cir. 2014)), these instances complement the record as a whole.

In support of his position that the ALJ's allocation of weight was erroneous, Plaintiff cites cases that are readily distinguishable based on the evidence. In *Briggs v.*

---

[3] For example, normal function is noted with respect to: gait (Tr. 338, 466, 468, 470, 476, 515, 528, 536, 554, 570, 585, 596, 627, 632); strength/motor function (Tr. 338, 341, 515-16, 528, 536, 551-52, 585, 596, 627, 631); coordination (Tr. 422); sacroiliac joint mobility (Tr. 516, 536); reflexes (Tr. 338, 341, 552, 570, 585, 596, 627); straight-leg raises (Tr. 552, 570, 585, 595, 607, 612, 627, 631); and sensation (Tr. 338, 516, 536, 552, 570, 585, 595, 607).

*Astrue*, the ALJ's "selective interpretation of isolated comments" failed to view the entire treatment record in context. 11-CV-6039-NKL, 2012 WL 393875, at *6 (W.D. Mo. Feb. 6, 2012). In *Farrar v. Colvin*, there was no conflicting opinion in the record. 1:15 CV 116 ACL, 2016 WL 5405406, at *8 (E.D. Mo. Sept. 28, 2016). In *Harris v. Colvin*, the record "contain[ed] no medical opinion evidence and no report from a consultative examiner." 4:13-CV-02313-SPM, 2015 WL 756325, at *5 (E.D. Mo. Feb. 23, 2015). Here, in contrast to those cases, the record contained Dr. Winkler's opinion based on the entire treatment record. Dr. Ahmad had only two initial visits from which to form his opinion in 2014, whereas Dr. Winkler had the benefit of over two years of records of ongoing treatment in 2015-2016 from which to form hers. Thus Dr. Winkler's assessment was supported by "more thorough medical evidence." *Thomas*, 881 F.3d at 675. Additionally, contrary to Dr. Ahmad's November 2014 opinion, Plaintiff testified in 2016 that he could sit for two hours at a time, stand for an hour at a time, be on his feet for two hours in an eight-hour day, and lift ten pounds. (Tr. 45-46) These are good reasons for discounting Dr. Ahmad's 2014 opinion suggesting total disability. A "physician's opinion that a claimant is incapable of gainful employment is often not entitled to significant weight." *Fentress*, 854 F.3d at 1020.

Finally, Plaintiff challenges the weight given to Dr. Winkler's non-examining opinion insofar as it contains minimal commentary. "[S]tate agency medical consultants are highly qualified physicians who are also experts in Social Security disability evaluation, and ALJs must consider their findings as opinion evidence." *Shrout v. Astrue*,

4:11CV 1945JAR LMB, 2013 WL 772827, at *18 (E.D. Mo. Jan. 8, 2013), citing 20 C.F.R. §§ 404.1527(d)(1) and 404.1527(f)(2)(I). But the weight given to the opinion depends on the level of supporting explanations. C.F.R. §§ 404.1527(c)(3).

For her supporting explanation, Dr. Winkler simply noted Plaintiff's history (diagnosis of lumbar degenerative disc disease, spinal fusion, stimulator placement) and cited without elaboration four exhibits containing Plaintiff's medical records from 2014 to 2016. Plaintiff contends that this is insufficient to justify the ALJ's reliance, according to *Papesh* (cited above). In *Papesh*, the ALJ discounted the opinions of two treating physicians and a neutral expert and instead gave great weight to a non-examining doctor's check-box opinion, even though the supporting explanation cited only two documents and ignored one treating opinion. The court was "unimpressed" by that explanation and deemed the ALJ's reliance on the opinion erroneous, particularly when weighed against two examining doctor's opinions based on nine and eighteen months of treatment. *Id.*, 786 F.3d at 1134.

But *Papesh* does not direct reversal here. While this Court is equally unimpressed with the level of insight supplied by Dr. Winkler's supporting explanation, unlike in *Papesh*, the present record does not so clearly tilt toward the other side of the scale. Here, the balances held, on one side, Dr. Ahmad's stale opinion after only two visits and, on the other, Dr. Winkler's recent opinion based on two years of treatment records. Mindful of this Court's standard of review, the Court finds the ALJ's assignment of weight reasonable on this particular record. It the ALJ's task to resolve conflicts in the evidence.

*Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the Court must affirm the decision. *Chaney*, 812 F.3d at 676.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

*(signature)*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 27th day of February, 2019.